**Thomas H. COUCH, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 34S00–8708–CR–743.

Supreme Court of Indiana.

Aug. 29, 1988.

Eugene C. Hollander, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Wendy L. Stone, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in Howard Superior Court Division I, Defendant–Appellant Thomas H. Couch was convicted of the crimes of rape while armed with a deadly weapon, a class A felony, robbery while armed with a deadly weapon, a class B felony, and burglary, a class B felony. He was sentenced by the trial court to consecutive terms of forty (40) years for the rape conviction, ten (10) years for the robbery conviction, and ten (10) years for the burglary conviction, for a total of sixty (60) years.

We consider only one of the several issues raised in this direct appeal since its resolution is dispositive of the entire appeal. We find the court erred in not declaring a mistrial when the State's witness testified concerning Couch's polygraph examination.

The facts are as follows: on September 20, 1985, K.N. arrived home from work at

approximately 12:50 a.m. Approximately 10 minutes later, her babysitter departed, leaving K.N. home alone with her three sleeping children. K.N. watched television until she fell asleep on the couch. She was awakened with a hand over her mouth and a knife at her throat. She could not clearly see the person's face, but could see a facial outline and physical build. K.N. testified that her assailant had a circumcised penis. She testified he forced her to commit fellatio and to have intercourse with him. He then left taking one of the diamond rings she was wearing and $70.00 from her purse.

Immediately after the crime occurred, K.N. told the police she thought the assailant was Tim Ellis, a person she had previously dated. However, when the police requested she take a polygraph examination concerning the identification of Tim Ellis she told the police she no longer thought Ellis was her assailant. Approximately one month after the crime occurred she was shown a six person photo array and she picked Appellant Couch's photo.

At trial Larry Martin testified he was a police informant and had known Couch for about two and one-half years. He also stated he had dated Couch's wife, Kimberly Couch, while the parties lived in Florida. Martin testified he saw Kimberly Couch wearing the ring which was taken from K.N., and he reported that fact to the Kokomo Police as part of his informant duties. John Martin testified that he managed Palmers Jewelry Store and that Couch brought in the ring to be sized. Couch's wife testified Couch had given her the ring as a gift. Dr. Jeffery Squires testified his examination showed that Couch was not circumcised.

During the State's case in chief Detective Sergeant Tom Melton of the Kokomo Police Department was called to testify on two separate occasions. During the second time he testified, the following ensued:

Q. Did he make a request to you at the time he denied the involvement?

A. Yes.

Q. What was that request?

A. That he submit to a polygraph examination.

Q. Was an examination conducted on him?

A. Yes, it was.

Q. After the examination was he still—

MR. FLEMING: Judge, I think we're going way far afield in this polygraph. Everybody, I think, everybody could polygraph.

JUDGE PARRY: You're excused to the Jury Room.

(JURY TO JURY ROOM)

JUDGE PARRY: Mr. Shrock, where are you heading?

MR. SHROCK: That after the polygraph test he remained a suspect. The door's open, Your Honor.

MR. FLEMING: How is it open?

MR. SHROCK: Because you didn't object at the time he stated that Mr. Couch asked for a polygraph. Now the fact the polygraph is mentioned—

MR. FLEMING: That doesn't open any door. I think it comes real close to mistrial. Mr. Shrock knows the results of polygraph tests aren't admissible.

MR. SHROCK: I understand. I understand that, and I didn't ask about the results. The only question I asked—

MR. FLEMING: I don't know what the—

JUDGE PARRY: I don't want to hear interrupted argument. Let him make his argument and you may make yours.

MR. SHROCK: The fact that the Defendant made a statement requesting a polygraph is part of the report and is admissible. Once that's not objected to and asked to be stricken from the record, then the results of taking the polygraph examination and the results are admissible. Once the door is open you can't close it. There's no partial objection here. It's got to be a total objection. It's got to be the way it was done in regards to Tim Ellis because Mr. Fleming anticipated the question and took care of it. The same

thing could have been done at this time but it was not. The door is now open. Now you control the production of evidence and if you decide that the information's too prejudicial, you have the opportunity to withdraw or order that it not be entered into evidence. My argument is once the door's open, it's admissible.

Record at 1034–1036.

Absent some form of waiver or stipulation by the parties, the results of polygraph examinations administered to witnesses or parties are not competent evidence in criminal prosecutions. *Serrano v. State* (1977), 266 Ind. 126, 129, 360 N.E.2d 1257, 1259–60. Further, absent some form of waiver, mention that a defendant took a polygraph examination or facts leading to this conclusion will not be permitted. A defendant is prohibited from stating he offered to take a polygraph test and the State is equally prohibited from referring to such a test. *Baker v. State* (1987), Ind., 506 N.E.2d 817, 819; *Moore v. State* (1977), 267 Ind. 270, 273, 369 N.E.2d 628, 630. In *Baker*, this court found reversible error when a police sergeant stated, in response to interrogation by the prosecuting attorney, that he had offered to set up a polygraph examination for the defendant. As in *Baker*, the prosecuting attorney and the police sergeant in the instant case deliberately planned the entry into evidence facts that indicated Couch took a polygraph examination and was still a suspect, clearly inferring he had failed the examination. This was highly prejudicial to Couch considering the facts and circumstances of this case. The trial court ordered the questions and answers stricken and admonished the jury to disregard them. However, this curative measure was not sufficient to remove Couch from the grave peril he was subjected to and resulted in reversible error. *See Baker*, 506 N.E.2d at 819.

The trial court is reversed. This case is remanded for a new trial.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.