**Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHRIS M. TEAGLE**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JASON A. DAVISON,                          )
                                           )
    Appellant-Defendant,              )
                                           )
       vs.                         )    No. 05A02-1211-CR-968
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Plaintiff.               )

APPEAL FROM THE BLACKFORD CIRCUIT COURT
The Honorable Dean A. Young, Judge
Cause No. 05C01-1111-FC-429

**May 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Jason A. Davison appeals his conviction for Child Molesting[1] as a class C felony, as well as the sentence imposed by the trial court. Davison raises the following issues on appeal:

1. Did fundamental error occur when the trial court failed to *sua sponte* admonish the jury not to consider Davison's testimony concerning a polygraph examination?

2. Is Davison's four-year advisory sentence inappropriate in light of the nature of the offense and his character?

We affirm.

In 2010, twelve-year-old H.B., who lived in Muncie with her father, spent much of the summer visiting her mother, Kristie Oliver, who lived in Hartford City. Oliver and her husband lived in a one-bedroom apartment above Davison's detached garage. Davison lived in the house with his mother, wife, two daughters, and H.B.'s half-sister, E.S. When H.B. would come to visit, she also stayed in the house.

During the week following her twelfth birthday, H.B. accompanied Davison and his family to the Hartford City Pool. When the group returned to the house, they watched a movie and ate dinner. At some point, people began going to bed, and eventually only Davison, H.B., and E.S. were awake. At that point, the three of them began watching videos on Davison's computer. At around 11:00 or 12:00, E.S. went upstairs to bed, leaving Davison and H.B. alone. About ten minutes after E.S. went to bed, Davison reached over and put his hand up the leg of H.B.'s shorts and touched the outside of her vagina. H.B.

---

1 Ind. Code Ann. § 35-42-4-3 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013).

pushed Davison's hand away and told him that she was going to bed. Davison then withdrew his hand and stuck his finger in his mouth, and H.B. went upstairs and went to bed.

H.B. did not speak to anyone about the incident until approximately a year later, when she told her aunt. As a result, a report was made to Child Protective Services and an investigation ensued. During a police interview, Davison confessed to fondling H.B. and wrote her an apology letter.

On November 1, 2011, the State charged Davison with class C felony child molesting. A two-day jury trial commenced on September 18, 2012, and Davison was found guilty as charged. A sentencing hearing was held on October 16, 2012, and Davison was sentenced to an executed four-year term in the Department of Correction. This appeal ensued.

1.

Davison first argues that the trial court committed fundamental error when it failed to *sua sponte* admonish the jury not to consider Davison's testimony concerning a polygraph examination. During the police investigation, Davison agreed to take a polygraph examination, which was scheduled for October 27, 2011. Because Davison confessed to the offense during the pre-exam interview on that date, the polygraph was not administered. During his trial testimony, Davison made mention of the scheduled polygraph three times. First, on direct examination, when defense counsel asked Davison why he wrote H.B. an apology letter, Davison stated

> Originally I was not supposed to be there for an interview. I was there voluntarily to take a polygraph test that was never administered. Officer Beckley was supposed to administer a polygraph to me, and he sat there and told me that he would explain everything about it and that if I had any

3

questions after that to ask them. He explained how a polygraph works and I asked him one question. I said, "Since this has been going on, I've been reading the charges against me over and over again and I started… I had been starting to have nightmares about it. I don't know what the nightmares or what caused the nightmares, but I, uhm, but will me having nightmares about what I've been reading cause, cause any problems with the polygraph?"

*Transcript* at 70. On cross-examination, Davison made two more references to the scheduled polygraph examination. Specifically, he testified that a video of his confession was edited such that it did not show "the fact that [he] was there for a polygraph." *Id.* at 72. He again mentioned the polygraph in the context of claiming that Officer Beckley coerced him into making a false confession. Specifically, he claimed that before beginning the polygraph, he explained to the officer that he was under stress, sleep-deprived, and not feeling well. According to Davison, Officer Beckley asked him if he wanted to go ahead with the polygraph, and he responded affirmatively.

Davison acknowledges that he did not object to any of this testimony, but argues that its admission amounted to fundamental error. The fundamental error rule is "extremely narrow" and applies "only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible." *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008). The error alleged in this case falls far short of these requirements.

We note that as a general matter, "reference to a polygraph examination without an agreement by both parties is inadmissible and grounds for error." *Shriner v. State*, 829 N.E.2d 612, 618 (Ind. Ct. App. 2005) (quoting *Glenn v. State*, 796 N.E.2d 322, 325 (Ind. Ct.

4

App. 2003)). "A defendant is prohibited from stating he offered to take a polygraph test and the State is equally prohibited from referring to such a test." *Id.* (quoting *Couch v. State*, 527 N.E.2d 183, 185 (Ind. 1988)). Because the parties never agreed to the admission of evidence concerning the polygraph, Davison was prohibited from mentioning it during his testimony.

We note, however, that "[t]he mere fact that error occurred and that it was prejudicial will not satisfy the fundamental error rule." *Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007). As an initial matter, it is clear that any error resulting from Davison's own testimony concerning the polygraph was invited by Davison, and therefore does not amount to fundamental error. *See Kingery v. State*, 659 N.E.2d 490 (Ind. 1995) (alleged error in admission of testimony elicited from a witness by defense counsel was invited and not fundamental). Moreover, we fail to see how Davison's testimony concerning the polygraph made a fair trial impossible in this case. In fact, it appears that the testimony would have aided him in his defense. Indeed, Davison's testimony that he offered to take a polygraph examination but the police declined to administer one would have bolstered his credibility, and he relied on the circumstances surrounding the scheduled polygraph to attempt to explain away his confession and support his claim that he was coerced. For all of these reasons, we cannot conclude that the trial court's failure to give an admonishment amounted to fundamental error.

2.

Next, Davison argues that his sentence is inappropriate in light of the nature of the offense and his character. Article 7, section 4 of the Indiana Constitution grants our Supreme

5

Court the power to review and revise criminal sentences. Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Wilkes v. State*, 917 N.E.2d 675, 693 (Ind. 2009), *cert. denied*, 131 S.Ct. 414 (2010). Nevertheless, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007).

Whether we regard a sentence as appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Furthermore, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Id.* at 1225. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

Davison committed class C felony child molesting, for which the sentencing range is two to eight years, with an advisory sentence of four years. Ind. Code Ann. § 35-50-2-6 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013). Davison received the four-year advisory sentence. "Since the advisory sentence is the starting point our General Assembly has selected as an appropriate sentence for the crime committed, the defendant bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence." *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied*. Davison has not satisfied that burden in this case.

With respect to the nature of the offense, we note that Davison stuck his hand up the leg of twelve-year-old H.B.'s shorts and touched the outside of her vagina, and when she pushed his hand away, stuck his finger in his mouth. Davison argues that the nature of the offense warrants revision because he did not penetrate H.B.'s vagina with his finger, he did not use physical force or threaten H.B, and the molestation was an isolated incident. Davison fails to acknowledge, however, that if he had penetrated H.B.'s vagina, he could have been convicted of child molesting as a class A felony, which carries a potential sentence of up to fifty years in prison. *See* I.C. § 35-42-4-3 (providing that a person who is at least twenty-one years of age and performs or submits to deviate sexual conduct with a child under fourteen years of age commits class A felony child molesting); I.C. § 35-50-2-4 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013) (setting forth sentencing range for class A felonies); *Hurley v. State*, 560 N.E.2d 67 (Ind. Ct. App. 1990) (noting that

deviate sexual conduct is defined in part as the penetration of the sex organ of a person by an object, and holding that a finger is an object for the purposes of the statute). Although we acknowledge that Davison did not engage in a repeated pattern of molesting H.B. or use threats or physical force against her, we also note that in molesting H.B., he violated a position of trust. H.B. testified that she had known Davison her whole life, and the record reveals that she spent extensive time with him and his family.

With respect to the character of the offender, Davison points out that he had no prior criminal convictions. We note, however, that Davison readily admitted to sexually abusing another girl. Specifically, at his sentencing hearing, Davison testified that nine or ten years ago, he "fingered" a fifteen-year-old girl. *Transcript* at 156. In light of this information, we cannot conclude that Davison's history of steady employment and the financial support he has provided to his family warrants a downward revision of his sentence. For all of these reasons, we conclude that Davison's four-year advisory sentence is not inappropriate.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.

8